Case number 20-2071, Michael Rop et al. v. Federal Housing Finance Agency et al. Oral arguments not to exceed. 15 minutes for plaintiffs, 15 minutes to be shared by defendants. Mr. Peter A. Patterson for the appellants. Good morning, Your Honors. May it please the Court, Pete Patterson for the appellants and I've reserved three minutes for rebuttal. The network sweep was imposed by an official serving in violation of the appointments clause and it was kept in place by an official who would have been fired but for his unconstitutional removal protection. Fidelity to the rule of law requires that a remedy be given. Do we know he would have been fired? Well, we know A. What President, ex-President Trump said. We know A from the Trump letter, which is what Collins said would demonstrate that. But we know B, even if we totally leave the Trump letter aside, it's wholly implausible that Director Watt would have been left in his position. He's someone in an important position in the administration, viewed as a partisan member of the opposite party. And we see what happened when Collins came down. Within hours, President Biden fired Director Calabria, who Trump had appointed. So it's clear that that's what would have happened had this removal protection not been there. That's the only explanation for how Director Watt ended up as the last agency. Apparently, Collins' opinion brought the matter to the attention of President Biden, right? I mean, you're saying it's clear, but is it clear? I think it's clear, Your Honor. You have a good argument. Yes, sir. In our opinion, it's clear that that is what would have happened. That's the only explanation for him being the last holdover from the Obama administration as an agency head serving out his complaint. Why didn't the President have an independent obligation to interpret the law and fire him, even if the law said otherwise? I mean, that's Humphrey's executor. That's what Justice Thomas says in Collins. It seems to me he has an independent obligation to do so. That's how the law gets tested in one way. Well, the President could have done that. He didn't do that just like President Obama didn't do that in the Dole litigation and the Supreme Court in Collins. What they said is there would be an entitlement to relief and compensable harm if there had been this sort of statement by the President, and we would say, or if there's an indication that the President would have done this, but for the removal protection. So that's the task that the Collins court set for this court. But getting back to the appointments issue, which if we get a remedy that we're asking for on the appointments clause, the removal issue does not even need to be dealt with. I want to ask you about that. So you say on August 17, 2012, when DeMarco signed that, the Third Amendment basically, is your theory there that he's acting as a principal officer at that point? Our theory is yes, he is a principal officer. So had he done this on his ninth month in office, you would say fine? Ninth month, you know, historically six months is kind of for the first 200 years what it was. More than nine. But yes, our point is that some acting service under Eden is allowed in special and temporary conditions. And text history and precedent demonstrate that at a minimum above two years is too long. And that person can no longer maintain. Are you merging those tests? Are you saying two years is an outer limit as set by Noel Canning, which as your friends on the other side say is very distinguishable as a recess appointment? Yes. We're saying that all this court has to decide in this case is that two years is too long. You can draw a bright line at two years. He's at three years when he does this, and that is too long. At least in Noel Canning, Justice Breyer had a hook, right? He pointed to the 20th Amendment, I think, and he said, look, this is kind of how Congress works, two years. Why isn't that distinguishable from an appointments clause case where there's no at least textual or historical hook that you've put forward that I know of? Well, we do. So as Justice Scalia said in dissent in that case, the adjournance clause was kind of, you know, not really germane in his opinion, but the court said, no, this is relevant to this. It says that Congress can't take a break for longer than three days, either house, without the consent of the other house, so we're going to look to that. And here we're saying look to the recess appointments clause, which in conjunction with first Article I and then the 20th Amendment, says nobody can serve as a recess appointee for longer than two years, and the recess appointment power. I don't see the analogy between recess appointments and the type of appointment we're dealing with here. I mean, why should we draw that analogy? It doesn't seem particularly analogous. Well, the reason is that the Constitution sets out two ways to appoint principal officers, advice and consent of the Senate or recess appointments. It doesn't mention acting officials. That has to do with the distinction. Right. So now I'm going to get to that. Fine, Your Honor, of course. So it doesn't mention acting officials, and acting officials are essentially a stopgap in order to get to either an appointment with advice and consent of the Senate or a recess appointment. If you look at the legislative history of the 1868 Act, which expanded the number of offices that could have recess appointments but decreased the time from six months to 30 days, the legislators said, look, that 30 days, which actually was originally 30, then down to 10, is plenty of time to do a recess appointment or to do a regular appointment. So the most the Constitution allows anyone to serve in a principal office without Senate confirmation is two years. So that's why we say this is perfectly reasonable. And just so I understand, after two years, he's still serving in the office. He's just, by your mind, become a principal officer. Yes, he's become a principal officer. Under Arthrex, the court says you look to what the person is doing. If he was presidentially appointed and Senate confirmed for another office, instead of being an inferior officer, could they move him over and could he serve more than two years? Potentially, yes. You would have to do maybe a historical analysis for that, and we haven't done that, but that would be a distinction, especially under the FVRA, people that are appointed now, it's almost as with the understanding that they can serve in any executive branch principal office because that is something that is allowed to be done under the FVRA. But another point on history and precedent that is important is there's one Supreme Court justice that has addressed this circumstance, and that's Justice Thomas and his SW general concurrence, where he said in footnote one that the acting general counsel of the NLRB was unconstitutional under Eaton because he had been serving for three years, exactly the situation that we have here, and what's notable is that the OLC, in an opinion... I don't remember him being unequivocal in that footnote. Okay, I read it to be unequivocal, but the footnote says what it says. But in the appointment of Matt Whitaker, the OLC issued opinion that looked at that Justice Thomas concurrence and said that is consistent with our historic guidance that individuals can only serve for a limited period of time in special and temporary conditions. So kind of mirroring up the OLC guidance that we've pointed to, which the OLC, they're not neutral arbiters in this. They're taking an expansive view of executive power. So the fact that they had said three years acting service is consistent with the guidance that we've given is notable. And the other side raises a number of reasons why even if we're right on the appointments clause, we shouldn't get a remedy, but none of those reasons should have merit. Can I read you back to Thomas' footnote? Yes, absolutely. And I was curious what you thought of this phrase. Because I don't think he was saying unequivocally. He said Solomon served for more than three years in office, limited by a statute to a four-year term, and he exercised all of the statutory duties of that office. So that seems to support your argument. The next sentence is there was nothing special and temporary about Solomon's appointment. And so is he defining special and temporary there in your mind? Or is he just saying, look, that isn't what I think of as special and temporary, so it's beyond the term? I read it as it's beyond the term, as he's taking that special and temporary language, which is the language from Eaton, and saying we approved of that in that circumstance, where it was ten months before modern communications halfway around the globe, but that was special and temporary conditions. This is not. So it's unconstitutional. So that's the way that we read that footnote, Your Honor. Can I ask you one other question about this stuff? Because the one area I have trouble with, let's assume you're right about principal versus inferior, is the de facto officer doctrine. So by my count, and I think some of my colleagues on the court count, 48 states have approved the de facto officer doctrine. The Supreme Court's approved it in about a dozen cases. And it seems to me that the de facto officer doctrine prevents courts from engaging in Bivens-type analysis, where we're providing judicial remedies for something the Constitution doesn't specifically remedy, especially when the de facto officer doctrine promotes stability, it promotes people being able to negotiate with the government without looking behind what these officers are. Why shouldn't we apply the de facto officer doctrine here? I know you have an argument in your reply brief and in your initial brief, but I'd like to hear, because I struggled with that, to be candid with you. Yeah, no, I perfectly understand. And applying that would be fundamentally inconsistent with Ryder and Lucia, where the Supreme Court said we want to incentivize appointments clause challenges. And the de facto officer doctrine slams the courtroom door. No, I get that. But Ryder and Lucia could be cabined to judicial adjudication cases. And in those cases, it's not like an official in government affecting nationwide policy, so to speak. It's a particular case where the adjudication can occur again. Aren't both of those, if I'm, I could be wrong. Well, they are in agency adjudications. It's executive power. It's not a court case. But it relates to individuals rather than. Not just individuals, but the consequences of those decisions were very far-reaching in Lucia, for example. You know, that adjudication had to be reversed. But as a matter of precedent, many others did as well. Not just in the SEC, but the Social Security Administration after that. And this goes through this in Carr v. Saul, said, okay, everyone that is in the administrative process that had their case decided by one of these ALJs, if they have preserved that, they're on appeal, they have to get a new hearing. So it affected, you know, likely thousands and thousands of cases. So, and we'd say there's just simply no relevant distinction there. And so we think that the facto officer's doctrine doesn't apply. Ratification, we think that here, you know, A, it's been forfeited. There's no indication anyone has ratified. What's your best case for us enforcing the forfeiture and ratification when a serious argument that the stakes are high here? In other words, we can excuse the forfeiture. They've arguably doubly forfeited it. And I'm curious what they have to say about that because you brought it up in your opening brief in footnote three and they didn't ask that we excuse it. But what is your best case for that? I don't know that I have a case for that, Your Honor. I just think it is particularly in the circumstances that you've mentioned where we pointed out the forfeiture. They don't say anything about it. But even if it wasn't forfeited, I mean, there are a number of issues with it. I see I'm over my time. If you would like to finish it. Okay, so. Succinctly. Yes, succinctly. So, like I said, there's no indication that anyone actually has ratified this. All that they have, it's been defended in litigation and implemented. But no indication that anyone has actually gone back and said, yes, I would have done this from day one. But more importantly, it doesn't meet the Supreme Court's requirements under FEC, which is that there would someone, the ratifier had authority to do it at the time the act took place and at the time of the ratification. And here there was no one there that could have ratified when the network sweep happened. And even in 2014, which is the first instance when it could have been ratified, the financial uncertainty that the Supreme Court pointed to in Collins, saying that this was within the statutory authority, had dissipated. They had paid $130 billion of dividends in 2013. So no one could have looked at the situation then and used the rationale that the Supreme Court had said justified the action. All right, Mr. Kederberger, you are going first, I gather. Yes, Your Honor. Good morning, Your Honors. Rob Kederberger, I'm speaking for FHFA. I'll be going for eight minutes, and then followed by Mr. Sinzdak for Treasury, who will go for seven minutes. Your Honors, the District Court correctly dismissed the Appointments Clause claim regarding the duration of Mr. DeMarco's acting service, and that is the only issue ruled on by the District Court that the plaintiffs have appealed. The separate new claim seeking to eradicate the preferred stock in its entirety, that was never presented to the District Court, even though it could have been. Judge DePauw, I'd like to start out by addressing your question about the forfeiture, the ratification issue. So to be clear, ratification is about fourth or fifth down in the line of arguments that we have against this Appointments Clause. But it was raised below. Well, Your Honor, the thing is the briefing in this case closed below in 2017. Since the time the briefing closed, we've had three more directors and acting directors. We have had several amendments to the PSPA's further amendments that in effect continued the third amendment, albeit in modified form. But DeMarco wasn't in before. He wasn't in all the way to 2017, correct? That's correct, Judge DePauw. So you could have argued ratification below? Fair enough. We could have argued it after the one director. To answer Judge Cook's question, I didn't see it. You did not argue it below. Okay. And then they brought it up in their opening brief, and you didn't ask us to excuse the forfeiture, correct? That is correct, Your Honor. But to be clear, we don't think we really need it. Okay. So are you agreeing you forfeited it? We think you should excuse the forfeiture. For one thing, the Eighth Circuit relied on it. But they pointed that out in footnote three. They pointed to Batty. They said, look, the Eighth Circuit relied on it. But they didn't raise it below. And so now you're asking. So two strikes, you're not out. So you avoided three strikes is what you're saying. Understood, Your Honor. And the only thing I would add is the ratification argument has gotten a lot better because director after director after director has taken further. So that's a justification to excuse the forfeiture? What's your case for that? Well, Your Honor, in exceptional circumstances, you could excuse the forfeiture. But you don't need to reach it. Why don't I turn to the many other reasons why. You don't need to reach it. Let's not. Thank you, Your Honor. The reasonable under the circumstances test, which is their primary theory for the Appointments Clause claim, it's not justiciable. No court has ever applied such a test. And the reason why is that the. . . Do you need to get to justiciability? Well, they're asking you to apply a reasonable under the circumstances test. Are you defending. . . Are you suggesting that we should affirm based on the district court's reasoning? Absolutely, Your Honor. The district court was correct in finding that those factors are not judicially discoverable. Well, was Eaton wrong then? Because Eaton did this. Well, Eaton. . . What gives rise to the justiciability problem is the reasonable under the circumstances standard. Eaton did not involve a situation where Mr. Eaton was urging that kind of standard. Wait, I'm sorry. So now I'm not understanding. So Eaton says it's got to be special and temporary and limited, right? And Eaton is resolving someone who's in an acting capacity. That's correct, Your Honor. And you're saying Eaton's wrong because they resolved that, or am I missing something? No, Your Honor. I'm not saying Eaton's wrong. I'm saying the test that they're urging be used to determine what's reasonable under the circumstances is, in effect, grading a president on how effectively he or she carried out their appointment responsibilities, their responsibility to nominate a candidate. I don't understand it that way. Maybe correct me where I'm wrong. What I understand them to be saying is, look, presidents. . . There's an appointments clause in the Constitution. At some point, a president's got to use it. They can't just appoint actings for four years and skip the Senate, right? Because under your theory, President Biden could come in and say, I don't want anyone confirmed. I'm just going to appoint all actings. And your theory is, no problem. Nothing to see here. Courts can't get involved. And, you know, there's been a history of Congress being asleep at the switch and the executive taking advantage of it. Your Honor, Congress has never been asleep at the switch in this area. Congress, ever since acting officers started, there's been the Vacancies Act, the federal vacancies reform. It's been amended all through the years to impose very tight limits. Congress chose not to apply those limits to this particular office, the director of FHFA. And that's okay? So they can decide when you have to use the appointments clause and when you don't? Where does it say that? It's quintessentially the kind of thing that's best left to the political branches because the factors that you would need to consider in determining the reasonable under the circumstances is basically trying to determine whether the president delayed too long in sending a nomination. Where they got it from is OLC opinions, and OLC outlines the factors. It just doesn't seem to me. I mean, you're essentially arguing that the district court was correct in saying this was a political question. And it doesn't seem to me that any of the indicia that normally identify what a political question is are present here. Well, these aren't. So there's a couple things. This is an area that's textual. Is there any other path in which you might direct us to solve this case in your favor? Or is that the only one? I'm going to take the cue to talk for a couple minutes about the de facto officer, Dr. Crowley. Because the de facto officer doctrine is a classic. This is a classic application for the de facto officer doctrine. And that's particularly so if we use a standard that's indeterminate and that's being applied retroactively. Because the thing is that at the time when Mr. But then what does Ryder mean when they say we want to encourage people to bring appointments clause challenges? What would be the point if we always applied the de facto officer doctrine? The court would say bring something you can never win. Well, to be clear, Ryder is cabined to a very narrow set of circumstances, which is an adjudication. So when somebody is appealing a criminal conviction, it's one thing to say that on direct appeal, they can raise the issue that the judge that was hearing their case was not validly appointed. And so it's one thing to give that kind of incentive. But this is light years away from that. This is a dramatic action geared toward the national economy where the housing finance market hangs in the balance and there's any number of countless third parties. So can I ask you, how do you draw the line between the de facto officer doctrine and usurpers of office? Where would you draw the line? So there's two, right? The way to look at the de facto officer doctrine is they're either a de facto officer in case the government wins or they're a usurper in case in that case your friend wins. Where do you draw the line there? Well, so the D.C. Circuit has developed a modified version of the de facto officer doctrine that says that you can attack the officer's authority in a collateral attack, but it has to be brought at or around the time of the challenged action and the agency has to be on notice. So you could apply that modified. That sounds more like quo warranto, which the courts haven't necessarily adopted. I get that that was the English practice and it moved over to America and some states use it, but the federal courts, I know D.C. has kind of endorsed it, but the federal courts throughout have not endorsed that. D.C. is the one that has not endorsed it. D.C. Circuit has applied, has loosened that. But they don't win even under the loosened version. And as far as a usurper, I mean, nobody disputes that Mr. DeMarco was validly designated as acting director, pursuant to statutory authority, served in that role. They're saying that at some indeterminate point he ceased to have the ability to act. That's not a usurper, Judge Lepar. That's a classic example of the application of the de facto officer doctrine. I see that my time has expired. Thank you, Your Honors. Mr. Sinsdak? Thank you, Your Honor. May it please the Court, Jerry Sinsdak, appearing on behalf of the Treasury Department. I'll just jump right in, following up on some of Your Honor's questions about how to resolve this case. I think one issue that hasn't been addressed and one way this court could resolve it is the timeliness of plaintiff's challenge here. I think even Ryder, in talking about the de facto officer doctrine, mentioned it wouldn't bar a timely challenge. And here we have a challenge that was brought five years after the alleged action here. And this isn't an adjudication, as has been discussed. This isn't involving a judicial review of a particular action. This is an action challenging a contract that plaintiffs were in a party to between Treasury and FHFA and the enterprises, which the Supreme Court made quite clear was an action taken to stabilize the housing market, to ensure that these enterprises would continue to perform the key functions that they've been performing for years. It is the type of transaction on which market participants have relied for years and which FHFA and Treasury have relied. They have subsequently amended that agreement on a few occasions, including as recently as July 2021. And plaintiffs are here asking this court to upset all of those expectations by filing a suit years after they could have brought it on a theory that was never previously recognized by any court. Does the court consider untimeliness? I don't know. The district court, as your honors know, ruled on the political question doctrine. It was an issue that was raised. Let me stop there. Right. Okay. But the untimeliness or being a stale claim, is that? I believe. It doesn't seem to be your lead argument either, does it? Isn't there a straightforward? I mean, it's like these two arguments look for excuses not to consider the core issue. Sort of fringe things. Well, I mean, to be clear, your honor, I don't want to. Our view is that there is no appointments clause violation here. I'm just suggesting if your honors were interested in avoiding that question. What if we are? But then we would urge your honors to hold that the. Why don't you make that argument? Okay. The appointments clause, of course, as recognized in Eaton, does not impose a limit on the tenure of an acting officer. But Eaton does say temporary, limited, special and limited circumstances, temporary. That wasn't a vacancy. It was an absence. I distinguish between the two, and maybe you can draw a line for me. So there, right, the consul got sick, I think had to come home, and the acting assumed the role for a limited period of time. Here, it's a vacancy, which is different. There's no one to come back to the job. And what your position, what really troubles me about your position is the theory is the president can have actings forever. And we never need to go through the Senate confirmation process. And that can't be what the appointments clause means. Your honor, of course, we don't think the appointments clause places a limit. But, of course, there are other limits placed on a president's ability to do that. Congress has historically placed tenure limits and other limits. In this case, it places But let's say Congress never does. Let's say Congress, because for this office, they haven't placed a limit. For this office, from now until the end of time, can presidents appoint people through the acting process, and they can fulfill the roles, the functions of a principal officer without ever having Senate confirmation? Your honor, yes is the answer to your question. But I would point out that there are many reasons why presidents Do you understand why that would trouble you? I understand why that troubles you. I would point out that there have been, since the very first Congress in 1792, Congress has authorized acting officers without a temporal limit. We know from the legislative history there are 40 such statutes in the late 90s, this statute. It hasn't led to presidents appointing acting officers. The reason that's theoretical rather than actual is just the whole politics, just the way things work in terms of changes of power and the presidency and so on and so forth. Is that right? That's correct, your honor, and that's why, you know, and the Supreme Court discussed this in Noel Canning, that acting officers are viewed as a lesser stature often, even if they have the statutory authority that the How did he sign the Third Amendment? Did he sign it labeling himself as an acting? He did, your honor, although he could have done it as his deputy capacity, and that's one reason if plaintiffs had raised this argument in a timely fashion, the agency could have perhaps redone it as, you know, to solve any question about this. We don't think it was a problem. But he did sign it as an acting. He did sign it as an acting. And yes, as Judge Gibbons, as you pointed out, there are political and practical limits. There's changes of administrations. Congress can, of course, place pressure. The Senate can place pressure on a president, and that's why we haven't had this. So, I mean, obviously what Judge DePauw says is a theoretical problem, but. It is a theoretical issue, but it's not one that we think is. It hasn't happened in reality. It hasn't happened in reality. Well, DeMarcus served over three years. Including a president, even though the president had nominated someone in between. Yes, we're not suggesting it couldn't be three years. Presidents nominate people they know can never get confirmed. You could keep your person in office, in theory. Your Honor, I mean, I think. You could keep someone politically unacceptable, politically unaccountable by doing it this way and avoid Senate confirmation. I'm not sure you could keep someone who's politically unpopular from the Senate's perspective. Obviously, the Senate could, Congress could impose a limit later via statute. And get vetoed. I know, but it could, well, it could do it without, it could override that veto, Your Honor. But, you know, they also can place other pressures on the president, including holding hearings. Why is this taking so long? Holding up other nominations if they're unhappy with the time the president is taking and so forth. And so, yes, of course we. Can I ask you about Arthrex? Because I didn't see much in the briefs on it. And in that case, the chief talked about the way to determine between principal and inferiors is whether the inferior had a principal over them between them and the president. Why doesn't that test apply? Well, Eaton makes quite clear that a principal officer acting, or I'm sorry, an acting officer is an inferior officer. I see Eaton as an exception to Arthrex because Arthrex cited Eaton. But then I go back to what your friend says, which is it has to be temporary and limited. Can I also, this is a little bit off point, but it's about Eaton. I would also point out that Eaton actually was replaced by an acting, he was replaced by a vice counsel who wasn't confirmed by the Senate. That doesn't take a role, but the Supreme Court had no problem with one acting person being replaced by another acting person. Obviously that wasn't at issue there. I'm not suggesting it is. And we think when it says limited and temporary, that refers to a time period when the president is actively seeking a replacement, which was true here, and serving only until that point. I see my time is up, Your Honors. Thank you. All right, Mr. Patterson, you had three minutes, I think. Yes, Your Honors, and just a few quick points. First of all, back on the de facto, I mean, I think it's notable that the other side continually goes to these ancillary issues versus facing the main issue because, as they've confirmed, their answer on that is there is no limit. That simply can't be the right answer for how long acting officials can serve, and we've offered a bright line test at two years that is consistent with what the Supreme Court did in Noel Canning. It's not statutorily required. Well, it's not statutorily required. It requires mixing a recess appointment with this kind of appointment. Right, and the explanation, Your Honors, I mentioned was that is the method, the Recess Appointments Clause is the method the Constitution actually provides for someone serving in a principal role. And so this is an exception, a stopgap. So it would have the exception swallow the rule to say that they could go past two years. But on the de facto issue, the Supreme Court has never applied the de facto officer doctrine to deny a remedy in an appointment clause challenge. So there just is no indication that this should be the first time here. And with respect, if there are 48 states that do it, well, that's those states' prerogative, but this is a federal constitutional principle that the court should uphold. There was something mentioning that Ryder was about a criminal case. The language of the case doesn't limit it to that. And then Lucia, which was not a criminal case, had the same language about we need to give incentive. It was also an adjudication, right? It was also adjudication, yes, Your Honor, but as I mentioned, had broad reaching consequences. And then in terms of timeliness, we brought this within the statute of limitations. That's timely. You know, there's no indication of anything that, you know, there's going to be more prejudice or something because of any delay in bringing the suit. The remedy historically quo warranto was used. Why isn't that the proper way to seek this remedy? I'm not aware of any quo warranto writ that we could bring to have the person out of the office. And, again, that's inconsistent with Ryder and Lucia. Those weren't quo warranto actions. The Supreme Court said we want to incentivize these things. The last thing I wanted to mention is on the remedy. There's been a lot of, I would say, rhetoric about kind of the consequences of ruling in our favor. But the remedies we've asked for, the only practical consequences on the market, would be putting Fannie and Freddie in a stronger financial position. So that's not going to have untoward consequences on anyone. The government's going to retain the right to at least 80% of the residual value of these companies, which is likely in excess of $100 billion. So it's a remedy that we submit would be demanded by the Constitution. We thank you both for your argument. Not both, both sides. Three lawyers. We thank you all for your argument, and we'll consider the matter carefully.